UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| CLARE HIGGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:17-cv-00125-RLY-MPB |
| ) | |
| NANCY BERRYHILL Deputy Commissioner of ) | |
| Operations of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 20). Plaintiff Clare Higgs seeks judicial review of the Social Security Administration's final decision deeming her ineligible for Disability Insurance Benefits. The matter is fully briefed. (Docket No. 14; Docket No. 18; Docket No. 19.) It is recommended that the District Judge **REMAND** the decision of the Commissioner of the Social Security Administration finding that Plaintiff Clare Higgs is not disabled, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

**Introduction**

Ms. Higgs filed an application for Disability Insurance Benefits under Title II of the Social Security Act on January 27, 2014, alleging that she became disabled on August 5, 2013. Her claim was denied initially and upon reconsideration. At Ms. Higgs's request, a hearing was held on July 12, 2016, before Administrative Law Judge (ALJ) Jason R. Yoder, where Ms. Higgs and James Borderay, a vocational expert, appeared and testified. On September 2, 2016, the ALJ

issued a decision concluding that Ms. Higgs was not disabled. Ms. Higgs requested a review of the ALJ's decision by the Appeals Council. The Appeals Council denied review on July 19, 2017, thereby making the ALJ's decision the final decision of the Social Security Commissioner. 20 C.F.R. § 404.981; *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). On August 11, 2017, Ms. Higgs timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

## **Standard for Proving Disability**

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the

2

Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and her RFC. If so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

**Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ—not the Court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. Richardson v. Perales, 402 U.S. 389, 399-400 (1971). Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See* Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. Arnett v. Astrue, 676 F.3d 586, 592 (7th Cir. 2012); Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

**Analysis**

**I.   The ALJ's Sequential Findings**

The ALJ found that Higgs had not engaged in substantial gainful activity since August 5, 2013, the alleged onset date—therefore, the ALJ proceeded to step two of the analysis. (Docket No. 12-2 at ECF p. 17).

At step two, the ALJ determined that Higgs had severe impairments of degenerative disc disease of the lumbar and cervical spine, migraine headaches, hip bursitis, alcohol use disorder in

partial remission, left shoulder bursitis, fibromyositis/fibromyalgia, obesity, sleep apnea, and depression. *Id. See* 20 C.F.R. § 416.920(c). The ALJ also determined that Higgs had the following non-severe impairments: hypertension, hyperlipidemia, and irritable bowel syndrome. (Docket No. 12-2 at ECF p. 18).

At step three, the ALJ found that Higgs's combination of impairments did not meet or medically equal the severity of one of the listed impairments. 20 C.F.R § 404, subpart P, Appendix 1. (Docket No. 12-2 at ECF p. 18). The ALJ considered Listing 1.04, Listing 3.10, Listing 11.03, and considered Higgs's fibromyalgia pursuant to SSR 12-2p and obesity pursuant to SSR 02-1p. (Docket No. 12-2 at ECF p. 19). Further, the ALJ considered Higgs's mental impairments, singly and in combination, pursuant to the criteria of Listing 12.04, 12.06, and 12.09, specifically whether the "paragraph B" criteria were satisfied. (Docket No. 12-2 at ECF p. 19). The ALJ noted that Higgs did not meet the "paragraph B" criteria because she did not have at least two of the following: marked restrictions of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.* Instead, the ALJ concluded that the evidence showed Higgs's activities of daily living show mild restriction; social functioning show moderate difficulties; concentration, persistence, or pace show moderate difficulties; and two recorded episodes of decompensation. (Docket No. 12-2 at ECF p. 20).

Prior to Step four, the ALJ determined that Higgs had the RFC to perform light work with the following limitations:

> [S]he can lift and carry up to 20 pounds occasionally and less than 10 pounds frequently; she can sit for at least 6 out of 8 hours, and stand and walk for about 6 out of 8 hours; and she can frequently balance and occasionally stoop, kneel crawl, and crouch, but never climb ladders, ropes or scaffolds. She must avoid all exposure to dangerous workplace hazards such as exposed moving machinery

5

>and unprotected heights; and she must avoid concentrated exposure to temperature extremes such as heat and cold, wetness, humidity, and vibration. She can understand and remember simple instructions and carry out simple, routine tasks that require little independent judgment or decision—making at an average production rate pace but should not perform tasks with stringent speed or strict rate based production requirements and involving few if any changes in the daily work tasks or work environment, and she can tolerate occasional interaction with others, including the public, coworkers, and supervisors.

(Docket No. 12-2 at ECF pp. 20-21).

The ALJ concluded that Higgs could perform her past relevant work as a quality assurance inspector, both as generally performed in the national economy and as she previously performed it. (Docket No. 12-2 at ECF p. 30). This is consistent with the testimony of the vocational expert (VE). (Docket No. 12-2 at ECF pp. 80-81). The ALJ also made an alternative finding for step five.

Higgs was classified as a younger individual age 18-49 on the alleged disability onset date, but her classification subsequently changed age category to closely approaching advanced age, with a high school education and an ability to communicate English. (Docket No. 12-2 at ECF p. 30).

The ALJ found that there were a significant number of jobs in the economy that Plaintiff could still perform. Based on the testimony of the VE and, considering the claimant's age, education, work experience, and RFC, the ALJ concluded that she would still be able to perform the jobs of housekeeper, cafeteria attendant, and an inspector and testor. (Docket No. 12-2 at ECF p. 31). The ALJ also found that claimant could perform sedentary jobs, including: inspector/sorter, a surveillance system monitor, and a machine tender. *Id.*

6

II. **Review of Plaintiff's Assertions of Error**

    A. **Whether ALJ erred in finding Plaintiff's irritable bowel syndrome as a non-severe impairment.**

Higgs asserts that the ALJ erred by assessing her Irritable Bowel Syndrome ("IBS") to be non-severe at Step 2; a finding Higgs alleges impacted the overall analysis at Steps Four and Five because the error resulted in a finding that Higgs could perform work at the light level. (Docket No. 14 at ECF p. 4). Specifically, Higgs argues the ALJ erred by assuming that because something was likely related to narcotic constipation that it automatically made the underlying IBS "not severe;" that the ALJ erred in determining that her IBS was "well controlled;" and that the ALJ failed to follow Social Security Ruling 96-3p. (Docket No. 14 at ECF pp. 4-5).

The Commissioner asserts that the ALJ's Step 2 finding was supported by substantial evidence, including several pieces of evidence that indicated that her IBS was well-controlled. (Docket No. 18 at ECF pp. 3-4). The Commissioner also notes that the ALJ's determination is supported by the state agency doctors. *Id.* Finally, the Commissioner notes that where an ALJ has found some impairments were severe but some nonsevere, the Seventh Circuit has found "this particular determination is of no consequence with respect to the outcome of the case." (Docket No. 18 at ECF p. 5, citing *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010)).

At step two, the ALJ must determine whether an individual has an impairment that significantly limits the claimant's physical or mental abilities to do basic work activities, i.e., a "severe" impairment. Non-severe impairments are impairments that are slight abnormalities (or a combination of slight abnormalities) and have no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.921; *see also* SSR 96-3p. The ALJ found Higgs's Irritable Bowel Syndrome ("IBS") to be non-severe (Docket No. 12-2 at ECF p. 18).

7

The Seventh Circuit imposes certain articulation standards that the ALJ must follow, which are based on their precedential interpretation of the Social Security Administration's own rules and regulations. An ALJ must build an accurate and logical bridge between the evidence and his conclusion and, in doing so, "the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citation omitted). "The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires [the ALJ] to do." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985).

The ALJ did not completely ignore Plaintiff's subjective complaints related to her IBS nor the medical evidence discussing the same. However, the Court finds the ALJ's relevant discussion deficient, because it fails to acknowledge the supporting evidence of the record that would support the Plaintiff's complaints and may have impacted the ALJ's finding that Plaintiff's irritable bowel syndrome was a non-severe impairment. For instance, given that the Plaintiff is treated for several conditions requiring ongoing narcotic use, it was improper for the ALJ to discount Plaintiff's July 28, 2015, flare-up on the basis that the "overflow diarrhea" was "related to narcotic constipation." (Docket No. 12-2 at ECF p. 18). While this comment is supported by Nurse Practitioner Aaron Holderman's prescription of a bowel cleanse and follow-up in two months (Tr. 931), there was no evidence that Plaintiff's narcotic use or the related "overflow diarrhea" was resolved. While the ALJ relies on a January 8, 2014, record to conclude that Plaintiff's IBS is "well controlled" (Docket No. 12-2 at ECF p. 18, citing Docket No. 12-10 at ECF p. 31), a later, unaddressed May 8, 2015, record by Gastroenterologist Donald Bailey, M.D. noted complications from Ms. Higgs's IBS in the form of blood in the stool, constipation, and diarrhea. (Docket No. 12-17 at ECF p. 72).

In failing to acknowledge this evidence that would have supported her need for frequent restroom breaks due to diarrhea secondary to IBS, the Court cannot determine whether the ALJ was aware of the relevant evidence, nor can the Court determine how the ALJ concluded that it was contradicted by more persuasive evidence of the record.

The Commissioner argues the ALJ's determination with regards to Plaintiff's IBS is supported by the state agency doctors, R. Fife, M.D. and R. Ruiz, M.D. (Docket No. 18 at ECF p. 4). However, Dr. Fife completed his assessment on August 15, 2014, and Dr. Lovko on August 27, 2014, both prior to the 2015 records that indicated Plaintiff's IBS may be worsening. (Docket No. 12-3 at ECF pp. 9, 12). Similarly, Drs. Larsen and Ruiz reconsideration assessments occurred on November 10, 2014, still prior to the 2015 records. (Docket No. 12-3 at ECF pp. 24, 31). Thus, the Court does not find this argument persuasive.

The Commissioner is correct to note that, because the ALJ recognized other severe impairments, he was obligated to proceed with the evaluation process. (Docket No. 18 at ECF p. 5). However, even if the IBS was not classified as severe, the ALJ had a duty to still consider its effects on Plaintiff when assessing her Residual Functional Capacity (hereinafter "RFC"). *See* S.S.R. 96-3p. The RFC assessment does not include discussion regarding Plaintiff's IBS—thus, given this and that the ALJ did not address the later records indicative of worsening symptoms, the Court cannot conclude that the ALJ's finding at Step Two did not affect the outcome of the case. Remand is required to ensure that all of the evidence of record was adequately considered and that the Step 2 and, subsequently, RFC analyses fully reflect all of the supported limitations.

      **B. Whether the ALJ erred by failing to list Plaintiff's chronic fatigue syndrome as a "severe" impairment.**

Similar to the first issue, Higgs asserts that the ALJ's failure to find her Chronic Fatigue Symptom as a severe impairment at Step 2 amounted to err; a finding Higgs alleges impacted the

9

overall analysis at Steps Four and Five because the error resulted in a finding that Higgs could perform work at the light level. (Docket No. 14 at ECF p. 4). Specifically, Plaintiff argues that Dr. Reyes diagnosed her with Chronic Fatigue Syndrome and that the consultative examiner, Dr. Gray noted difficulties with attention and concentration—yet the ALJ never mentioned Chronic Fatigue Syndrome in his Step 2 analysis, despite the Step 2 standard being only a *de minimis* standard. *Id.*

The Commissioner argues that a diagnosis alone is insufficient to prove that the symptoms were severe. (Docket No. 18 at ECF p. 5). Moreover, she argues Dr. Gray's evaluation did not attribute Higgs's CFS to her difficulties with attention and concentration and that the ALJ properly recognized Dr. Gray's limitations and included them in his RFC. (Docket No. 18 at ECF p. 6).

While the ALJ did not include any discussion regarding Chronic Fatigue Syndrome within his Step 2 analysis, he did recognize that she had previously been assessed with chronic fatigue syndrome in 2014. (Docket No. 12-2 at ECF p. 25, citing Docket No. 12-11 at ECF p. 39). Of course, however, a diagnosis alone is insufficient to prove that the symptoms were severe. *See Anderson v. Sullivan*, 925 F.2d 220, 222 (7th Cir. 2991) (mere diagnosis does not prove disability). The existence of a diagnosis does not mean that the condition caused symptoms that affected Plaintiff's ability to work. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of various conditions of hers but the severity, and concretely, whether . . . they have caused her such severe pain that she cannot work full time."). While Consultative Examiner Jeffrey Gray, PhD specifically noted difficulties with attention and concentration, there is no evidence linking Plaintiff's CFS diagnosis with Dr. Gray's finding. Nowhere in Dr. Gray's evaluation did he mention CFS as the cause of those

10

difficulties and, in fact, he attributed her "salient attentional deficits" to depression, stress, anxiety, and chronic pain. (Docket No. 12-14 at ECF p. 38). Thus, his opinion does not support Plaintiff's argument that CFS was a severe impairment nor does it even draw a causal link between CFS and the limitations he assessed. The Court notes that Plaintiff cites to no additional evidence contradicting the ALJ's CFS assessment. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) ("The burden . . . is on the claimant to prove that the impairment is severe.").

### C.  Whether the ALJs RFC was supported by substantial evidence.

Finally, Higgs argues that the ALJ's finding that she could perform past relevant work at Step 4 was in error because the ALJ assessed an improper Residual Functional Capacity ("RFC"). (Docket No. 14 a ECF p. 7). Specifically, Higgs argues that the ALJ completely ignored several material facts which eliminate her ability to stand and walk for 6 out of 8 hours. Higgs asserts, relatedly, that the ALJ attempted to reduce the impact of Higgs's MRI's and the effect that her back and right hip pain would have on her ability to work. (Docket No. 14 at ECF p. 8). Higgs argues that the ALJ improperly undermined her credibility by equating her activities of daily living with her ability to maintain full time work and by omitting key parts of her testimony in his discussion. (Docket No. 14 at ECF p. 9). Higgs posits that the ALJ improperly discounted her headaches/migraines, ignoring medical records that showed they continued to be a severe impairment. (Docket No. 14 at ECF pp. 10-11). Finally, Higgs argues that the RFC failed to incorporate that she would require more than one absence a month. *Id.*

The Commissioner argues that the RFC properly reflects all of the Plaintiff's limitations. Specifically, she argues that the ALJ cited numerous objective records, noting that the results were "mixed" and that the ALJ's assessment aligned with the state agency physician's sit, stand, and walk limitations. (Docket No. 18 at ECF pp. 6-7). The Commissioner asserts that the ALJ

did not equate Plaintiff's activities of daily living with her ability to do full-time work, but instead to conclude that Plaintiff could do more than she claimed. (Docket No. 18 at ECF p. 9). The Commissioner counters Plaintiff's migraine arguments, indicating that treatment notes contradicted her subjective allegations. (Docket No. 18 at ECF p. 11).

Plaintiff argues that the ALJ's conclusion that she could return to her past work, at Step 4, as a plastic inspector, and his Step 5 finding were erroneous because he assessed an improper Residual Functional Capacity ("RFC"). The RFC must be assessed based on all relevant evidence in the record, including the objective medical evidence, the individual's statements about symptoms, statements and other information from treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Scheck v. Barnhart*, 357 F.3d 697, 698 (7th Cir. 2004).

Here, the ALJ determined that Plaintiff ". . . can lift and carry up to 20 pounds occasionally and less than 10 pounds frequently; she can sit for at least 6 out of 8 hours, and stand and walk for about 6 out of 8 hours . . ." (Docket No. 12-2 at ECF p. 20).

In support of that determination, the ALJ cited numerous objective records, noting that the results were "mixed." (Docket No. 12-2 at ECF p. 23). For example, x-rays showed severe facet arthropathy in her neck, and mild to moderate findings in her back. (Docket No. 12-2 at ECF p. 67; Docket No. 12-13 at ECF pp. 42, 48). Plaintiff also testified that her medications were effective, which was consistent with treatment notes from Stephen K. Young, M.D. (Docket No. 12-2 at ECF p. 23, citing Docket No. 12-13 at ECF p. 50; Docket No. 12-19 at ECF p. 5 ("She treats with [medication] and does get benefit from the medication with three times a day use . . . Neck pain being managed by pain management.")). It is the ALJ's responsibility, not

12

this Court's, to consider conflicts within the objective medical evidence and it is evident that the ALJ assessed the conflicting records with regards to Plaintiff's neck and back pain.

The opinion evidence also supports the RFC determination. Drs. Fife and Ruiz opined that Plaintiff could tolerate light work and that she was able to sit, stand, and walk for six (6) out of eight (8) hours. (Docket No. 12-2 at ECF p. 8; Docket No. 12-3 at ECF p. 25). The ALJ gave their opinions significant weight because they were consistent with the record, though the ALJ determined Plaintiff was further limited in her ability to crawl and tolerate exposure to concentrated extremes, wetness, humidity, and vibration. (Docket No. 12-2 at ECF pp. 29-30). The Court notes Plaintiff has not argued error based on the weight the ALJ assigned these state agency physicians.

The Court is not persuaded that the ALJ erred in his evaluation of the results of a January 2013 CT scan, which showed severe left facet arthropathy at two places along her neck. (Docket No. 12-2 at ECF p. 24, citing Docket No. 12-10 at ECF p. 6). The ALJ discussed the results of that CT scan, which took place eight months before Plaintiff's alleged onset date, and reasonably determined that it was not conclusive proof that she was disabled. *Id.* As the ALJ noted, following this CT scan, Plaintiff's chiropractor Jay Rohleder, D.C., placed her, not on total disability, but on light duty restriction for two weeks and by the end of the month, Dr. Rohleder released her to her normal duties as a custodian. (Docket No. 12-2 at ECF p. 24, citing Docket No. 12-9 at ECF p. 71). Plaintiff testified that her custodian duties included shampooing the carpets, cleaning the restrooms, running the sweeper, wiping down chalkboards, and mopping and also required Plaintiff to lift 15 to 25 pounds and to be on her feet most of the day. (Docket No. 12-2 at ECF p. 23; Docket No. 43-47). Thus, Plaintiff's argument that this CT scan proved her allegations about the severity of her limitations is unavailing.

The Court is unpersuaded by Plaintiff's contention that the ALJ equated Dr. Rohleder's "light duty" assessment with his own "light work" RFC and is similarly unpersuaded by Plaintiff's contention that the ALJ erred in the weight he applied to Dr. Rohleder's opinions. The agency regulations do not require an ALJ to discount a medical source opinion simply because the source was a chiropractor. *See* 20 C.F.R. § 404.1520. An ALJ may use evidence from other sources, such as chiropractors, to evaluate the severity of an individual's impairments. SSR 06-03p.[1] While an ALJ may not conclusively establish a medically determinable impairment with information from a chiropractor, the agency recognizes that the information from a chiropractor may provide insight into the severity of the impairment and how it affects an individual's ability to function. *Id*.

The Court is similarly unpersuaded by Plaintiff's contentions that the ALJ used Dr. Rohleder's CT results regarding her neck to make conclusions regarding the condition of her spine. The ALJ acknowledged that the CT scan Dr. Rohleder reviewed was of Plaintiff's neck. (Docket No. 12-2 at ECF p. 24). At no point did the ALJ conflate the conditions of Plaintiff's neck and lumbar spine. *Id*. The ALJ did not use the cervical CT scan in an attempt to reduce the impact of the MRI results; instead, the ALJ discussed the MRI results and acknowledged that they showed mild to moderate multi-level spondylosis and mild left foraminal stenosis. (Docket No. 12-2 at ECF p. 24). The ALJ also noted that despite her condition, Plaintiff reported relief from her medication, and continued to perform some housework, undertake long distance travel and substantial walking (Docket No. 12-2 at ECF p. 24). In sum, Plaintiff has not established that

---

[1] SSR 06-03p was rescinded by Federal Register Notice Vol. 82, o. 57, page 15263. Effective March 27, 2017, but was still the controlling ruling in effect at the time of this matter.

14

the ALJ relied on a CT scan of the cervical spine to address limitations related to the lumbar spine.

There is also no evidence in the ALJ's opinion that he was equating the agency's definition of light work with Dr. Rohleder's definition of light work—thus, the Court does not find error in his discussion of Dr. Rohleder's findings. Moreover, given Dr. Rohleder released Plaintiff to resume her normal duties two weeks after he recommended light work only—a fact the ALJ recounted in his opinion, further establishes that the ALJ did not improperly rely on Dr. Rohleder's temporary limitation in developing his RFC analysis. Moreover, the ALJ does not include Dr. Rohleder in his later discussion of the weights he assigned opinion evidence in his RFC assessment. Plaintiff argues there was evidence from acceptable medical sources that showed that she was, at best, limited to unskilled, sedentary work—yet fails to cite those sources. (Docket No. 19 at ECF p. 6). In sum, the Court finds no error with regards to the ALJ's treatment of Dr. Rohleder's records.

Turning to Plaintiff's argument that the ALJ improperly undermined her credibility, the ALJ concluded that the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. In relevant part, he reasoned:

> In terms of claimant's alleged inability to perform prolonged standing and walking, the weight of the evidence does not support this allegation. The claimant testified that she needed a cane to walk more than 25 feet, but later testified that she walks her dog for 45 minutes without a cane. The objective findings are mixed in the record. . . . The treatment notes show that her treatment has been helpful, although the claimant testified that it was not helpful. . . .

(Docket No. 12-2 at ECF p. 23)

And also:

> In regard to her reported inability to perform prolonged sitting, the weight of the evidence does not support this. She reported that she

15

> watched television and listened to music and there were few reports to her treating doctors that she had difficulty with sitting prior to June of 2015. She drove her family to Virginia this year, which is a twelve-hour drive each way and she was able to drive 6 hours before stopping for the night to rest. She reported that her cane was prescribed, but there is no evidence of this in the record. The weight of the record including the claimant's testimony regarding walking her dog three times a week does not support the medical necessity for a cane. Objective findings show normal gait. She reported constant migraine headaches without relief from Botox. However, the treatment records indicated that Botox was controlling her migraine headaches and she was not taking any prophylactic medication despite alleging constant pain. The claimant's neurologist noted that the claimant's headaches were responding to the Botox very well and her mini mental status examination was normal. . . . She is able to grocery shop, attend church and Bible study, and perform meal preparation and some household chores for 3-4 hours per day. . . .

(Docket No. 12-2 at ECF p. 23) (internal citations omitted).

The Court affords great deference to the ALJ's credibility finding, only overturning it if it is "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be 'patently wrong' and deserving of reversal." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (internal citations omitted).

An ALJ may not equate ones activities of daily living with her ability to engage in full-time work given that "a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance." *Bjornson*, 671 F.2d at 647. However, an ALJ is permitted to consider whether a Plaintiff's activities of daily living indicate that she can do more than alleged. *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p; SSR 96-7p;[2] *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir.

---

[2] The agency replaced SSR 96-7p with a new ruling, SSR 16-3p, Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Plaintiff's application was filed prior to

16

2016) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether 'testimony about the effects of his impairments was credible or exaggerated.'") (citation omitted); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (finding no error in the ALJ's consideration of claimant's daily activities as one factor that weighed against his account of disabling limitations).

The ALJ reasonably cited Plaintiff's ability to grocery shop, endure long distance travel, attend Bible study, prepare meals, and perform household chores. (Docket No. 12-2 at ECF p. 24). There is no language in the decision that indicates the ALJ implied that these activities indicated that Plaintiff could perform full-time work. Instead, the ALJ found that Plaintiff's activities indicated that she could do more than she claimed; a completely reasonable and permissible conclusion based on the record as a whole. Because the ALJ merely used Plaintiff's ADL's as a basis for suggesting Plaintiff exaggerated her limitations and did not use these ADL's, by themselves, to establish she could do full-time work, the Court is unpersuaded that the ALJ's omissions of details such as that she used a dishwasher or that she required rest after household chores amount to a patently wrong credibility determination.

The ALJ properly evaluated Plaintiff's testimony regarding her cane use. The ALJ noted Plaintiff's testimony that she used a cane, which was allegedly prescribed by her doctor for pain and weakness, when she walked 25 feet or more. (Docket No. 12-2 at ECF p. 22, Docket No. 12-2 at ECF p. 60). Yet, Plaintiff also testified that when she walked her dog three times a week, she did not use the cane. (Docket No. 12-2 at ECF pp. 71-72). Specifically, Plaintiff testified that she walked her dog along the trails around her home for forty-five minutes without her cane, though

---

March 16, 2016, but her hearing and the ALJ's decision both occurred after March 16, 2016. Regardless of which ruling was to guide the ALJ's decision, both rulings permit the ALJ to consider a Plaintiff's ability to perform daily living activities.

she acknowledged that extreme weather at times curtailed the walks. (Docket No. 12-2 at ECF p. 22; Docket No. 12-2 at ECF pp. 71-72). The Court notes that, contrary to Plaintiff's critique, the ALJ's RFC accounted for these environmental concerns, requiring that Plaintiff "must avoid concentrated exposure to temperature extremes such as heat and cold, wetness, humidity, and vibration." (Docket No. 12-2 at ECF p. 20). Finally, Plaintiff's assertion that "[t]he entire evidentiary record, therefore, clearly shows that Ms. Higgs is incapable of standing and walking for 6 of 8 hours and is instead limited to sedentary work at best" is unfounded, as much of the objective medical evidence above illustrates, including the state agency physician's opinions that support the ALJ's ultimate RFC. (Docket No. 14 at ECF p. 10).

Next, Plaintiff argues that the ALJ erred in discounting Ms. Higgs's headaches/migraines when he wrote: "The claimant's neurologist noted that the claimant's headaches were responding to the Botox very well and her mini mental status examination was normal." (Docket No. 12-2 at ECF p. 23, internal citation omitted). Plaintiff argues this statement, which relied on a July 22, 2014, medical record, ignores more recent medical records that Ms. Higgs's headaches/migraines continued to be a severe impairment after that date. (Docket No. 12-17 at ECF p. 22; Docket No. 12-18 at ECF p. 62). However, at Step Two, the ALJ included Plaintiff's migraine headaches as a severe impairment (Docket No. 12-2 at ECF p. 17) and while the Plaintiff insists that she experienced no relief from Botox injections, the treatment notes indicated that Botox injections were effective in controlling her migraine headache pain and that she was not taking any prophylactic medication despite alleging "constant pain." (Docket No. 12-2 at ECF p. 23; Docket No. p. 697-98). While Plaintiff argues more recent records show that her headaches "continued to be a severe impairment," those same records also show that the treatment provided was helpful (Docket No. 12-17 at ECF p. 22, "Pre procedural pain was 8/10; Post procedural pain

18

was 1/10;" Docket No. 12-18 at ECF p. 12-18 at ECF p. 62, "She has headache. Occipital in location. Right-sided. She gets Botox injection by Dr. Fadheel. This has helped."). Thus, unlike the IBS records discussed above, the Court fails to see how these later records contradict the earlier, cited record that the ALJ explicitly relied on.

Moreover, the ALJ never determined that Plaintiff's headaches were not a severe impairment. In fact, the ALJ account for Plaintiff's headaches in the RFC by limiting her to "unskilled work with no more than average production rate pace due to the effects of her migraine headaches and fibromyalgia pain in combination with her impaired attention and memory." (Docket No. 12-2 at ECF p. 30). Plaintiff argues the RFC fails to "properly account for the fact that such severe headaches would also render [her] off task for an acceptable amount of time," yet cites to no evidence—other than the evidence discussed below—that would support including such a limitation within the RFC analysis. (Docket No. 19 at ECF p. 4). Thus, Plaintiff has failed to prove that additional limitations are warranted. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Finally, Plaintiff argues that the ALJ failed to incorporate the fact that Plaintiff would be expected to have more than one absence per month and would be off-task greater than 10-15% of the time. As support, Plaintiff asserts the ALJ erred by not acknowledging that her most recent employer, the University of Southern Indiana, explained that Ms. Higgs missed 134.27 hours of work for her medical condition under the Family Medical Leave Act ("FMLA") in 2013. (Docket No. 14 at ECF p. 11). However, that argument does not properly reflect the record. The record shows University of Southern Indiana indicated Plaintiff's "attendance record showed that she missed 134.27 hours of unpaid and non-FMLA time from work for Fiscal Year 2013 (July 2012 to June 2013). The majority of her hours missed were in calendar year 2013 which equaled

19

109 hours of time missed from work." ([Docket No. 12-6 at ECF p. 4](#)). Thus, the records from University of Southern Indiana do indicate Plaintiff had taken at least some FMLA ([Docket No. 12-6 at ECF p. 12-6](#) at ECF p. 8), but it was also indicated that Plaintiff was mis-using her medical certificate in her absences. *Id.* In fact, University of Southern Indiana reported Plaintiff had missed 109.49 hours in calendar year 2013, which "does not include vacation or any absence due to approved FMLA or PLOA leave." ([Docket No. 12-6 at ECF p. 12](#)). Thus, it appears the vast majority of Plaintiff's absences were indeed non-vacation/FMLA/PLOA related absences. *Id.* Thus, the Court is unpersuaded by Plaintiff's arguments that this is evidence that Ms. Higgs will miss several days of work due to her impairments and does not find that the ALJ erred in omitting this evidence from his decision.

## Conclusion

For all these reasons, the Magistrate Judge recommends that the Court grant Plaintiff's brief in support of appeal ([Docket No. 14](#)) and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 15th day of May, 2018.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.